Fritz J. Firman, Bar No. 117011
Joseph A. Weber, Bar No. 133297
WEBER FIRMAN
1503 S. Coast Drive, Suite 209
Costa Mesa, California 92626
Tel: (714) 433-7185 Fax: (714) 662-0302
Email: firmanweber@gmail.com
Attorneys for Plaintiff
Katheryn L. Siroonian

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KATHERYN L. SIROONIAN, | CASE NO. |
| Plaintiff, | COMPLAINT FOR DAMAGES: |
| v. | **(1) VIOLATION OF FAIR DEBT COLLECTION PRACTICES ACT** |
| BAYVIEW LOAN SERVICING, LLC, | **(2) VIOLATION OF REAL ESTATE SETTLEMENT PROCEDURES ACT** |
| Defendants. | **(3) BREACH OF FIDUCIARY DUTY** |
| | **(4) BREACH OF CONTRACT** |
| | **(5) BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING** |
| | **(6) NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS** |
| | **DEMAND FOR JURY TRIAL** |

Plaintiff KATHERYN L. SIROONIAN alleges:

- 1 -

Complaint for Damages

**PARTIES**

1.   Plaintiff is and was at all times mentioned herein. a citizen of the State of California.

2.   Plaintiff is informed and believes that Defendant BAYVIEW SERVICING, LLC ("Bayview") is and was at all times mentioned herein a limited liability company located in the State of Florida.

**JURISDICTION**

3.      The jurisdiction of this court over the subject matter of this action is predicated on 28 U.S.C. Section 1332. Plaintiff is a citizen of the State of California. Defendant is a limited liability company organized and doing business in the State of California, with its principal place of business in Florida. The amount in controversy, without interest and costs, exceeds $75,000.

**VENUE**

4.      Venue is proper in the Central District of California, Santa Ana Division, in that the Defendant conducts business in this District and a substantial portion of the events or omissions giving rise to the claims occurred within this District.

5.      Plaintiff resides in Orange County, California.

**INTRODUCTION**

6.      Plaintiff is a natural person who resides at 36 Midsummer, Irvine, CA 92620 (hereinafter "Property"). The Property is Plaintiff's primary residence.

7.      Plaintiff was a Debtor under Chapter 13 of Title 11 of the United States Code in Case Number 8:12-bk-11150TA filed January 30, 2012 in the Central District of California (the "Chapter 13 Bankruptcy Case").

9.      Plaintiff has a first Mortgage Loan in the original principal balance of $709,731.00 (the "Mortgage Loan") that was originated in August 2005 by Countrywide Home Loans and was initially serviced by Bank of America. The Mortgage Loan is secured by the Borrower's residence located at 36 Midsummer in Irvine, California 92620 (the "Property"). Bayview was the Mortgage Servicer of this Mortgage Loan since 2013 and the events described herein.

- 2 -

## A. The Chapter 13 Bankruptcy Period.

On January 30, 2012, the Borrower filed a Chapter 13 Bankruptcy in Santa Ana, California. The Mortgage Loan was due for the February 1, 2012 payment in the amount of $4,770.46 on the date on which the Bankruptcy was filed. On February 13, 2012, the Borrower made a payment of $4,495.00 (the "First Bankruptcy Period Payment") which was the amount that the Bankruptcy Trustee told the Borrower's Bankruptcy attorneys was the correct payment. This payment was posted to Suspense since it was not a complete payment. This short payment caused the Mortgage Loan Account to become 30 days delinquent on March 2, 2012. A monthly payment of $4,770.46 was made on March 20, 2012 but the entire amount was applied to the prior month's balance due since the short payment made in February 2012 caused the Mortgage Loan to be delinquent. Each payment made from March, 2012 until February 2013 in the amount of $4,770.46 resulted in a delinquency because of the shortage in the First Bankruptcy Period Payment. The Borrower was unaware of the fact that the Mortgage Loan remained 30 days delinquent.

The monthly payment was changed to $4,545.17 on February 1, 2013. The Borrower, however, submitted overpayments of $4,770.46 from March 2013 through June 2013. As a result of the overpayments, the Suspense Account showed a balance of $4,174.37 in June 2013 which was insufficient to make the $4,545.17 payment. As a result, the Mortgage Loan was in a delinquent status. Bayview did not notify the Borrower or her Bankruptcy attorneys of the delinquency. As a result, the Borrower was unaware of this delinquency of the Mortgage Loan which occurred early in the Bankruptcy Period. She did not learn of any alleged delinquencies in the Bankruptcy Period until the end of the five-year Bankruptcy Period.

Complaint for Damages

### B. Erroneous Payment Change Went into Effect in January 2015 Despite Borrower's Bankruptcy Counsel's Objection.

On November 7, 2014, Bayview's Bankruptcy counsel sent a Payment Change Notice to the Bankruptcy Trustee to increase the monthly payment from $4,545.17 to $6,406.40 effective January 1, 2015. The increased amount was due to an Escrow shortage. An Annual Escrow Statement had been sent to the Borrower stating that the current payment was $4,545.17 but would be increased to $6,406.40 to cover the additional Escrow payments resulting from the alleged Escrow shortage.

The Borrower's Bankruptcy counsel spoke to Bayview's Bankruptcy counsel and advised him that the increased Escrow payment was a violation of the Automatic Stay and could not be implemented without Relief from the Automatic Stay because the Bankruptcy Trustee was not handling any tax arrearages and insurance was in effect. Bayview's Bankruptcy counsel told the Borrower's counsel that he would advise Bayview that the former payment of $4,545.17 would remain in effect and that they could not implement a payment change that included an increase in the Escrow payments. Relying on Bayview's attorney's statements, the Borrower's Bankruptcy counsel advised her to keep making the same payments of $4,545.17 and to ignore the erroneous increase to $6,406.40.

Despite Bayview's Bankruptcy counsel advising the Borrower's Bankruptcy attorney that the monthly payment would remain at $4,545.17, Bayview implemented the increased payment to $6,406.40 beginning in January 2015. Because Bayview's internal policies precluded Bayview from sending out monthly Mortgage Statements to the Borrower and her Bankruptcy counsel during the Bankruptcy Period, the Borrower and her Bankruptcy counsel were unaware of the fact that the monthly payment had been increased in error and that the shortfall resulting from the

_____
Complaint for Damages

discrepancy between the payments being made and the erroneous new payment amount would result in a very large negative balance in the Account when the Bankruptcy Period terminated in five years. The Borrower made the $4,545.17 payments from January, 2015 through and including February, 2016. Each payment was considered short and was put into Suspense until a sufficient amount was paid into Suspense to reach the erroneous payment amount of $6,406.40 at which point a full payment was applied to the Mortgage Loan Account. Bayview changed the monthly payment to $4,932.66 as of February 2016.

The Post-Petition Ledger from Bayview's Customer Service shows that the erroneous payment of $6,406.40 continued to be listed as the Amount Due from January 2015 to February 2016. A true and correct copy of the Post-Petition Ledger is attached hereto as **Exhibit A**.

<u>C. Negative Balance of $22,924.77 at the end of the Bankruptcy Period.</u>

As a result of Bayview's error of implementing the increased payment of $6,406.40 in January 2015 as the required payment (as shown on the Post-Petition Ledger) while the Borrower continued to make payments that were substantially below that amount, as of September 2017 when the Borrower emerged from the Chapter 13 Bankruptcy, Bayview claims she owed Bayview a negative balance of $22,924.77.

This was shocking to the Borrower because she had made all 60 mortgage payments during the Bankruptcy Period totaling $121,523.48 as stated in the Notice of Final Cure Payment in September, 2017 which was to her understanding the full payment on her Mortgage Loan during the five-year Bankruptcy Period. Bayview filed a Response to the Notice of Final Cure on September 26, 2017, claiming a delinquency of $22,924.77 (the "Delinquency"). Neither Debtor nor her Bankruptcy attorneys were notified of any shortfall in the Account during the entire five-year Bankruptcy Period.

- 5 -
_____
Complaint for Damages

### D. Bayview's Loan Service Department Insisted that the Delinquency Was Accurate.

In September 2017, the Borrower's Bankruptcy attorneys contacted Bayview's attorneys in an effort to get an explanation of the reason for the Delinquency when the Borrower had made the 60 payments as required in the Bankruptcy. They were unable to get a proper explanation from Bayview's counsel, who insisted that there was no error made by Bayview. Bayview's attorneys referred to the Post-Petition Ledger which they claimed showed partial or short payments made by the Borrower which were the reason for the Delinquency. Bayview said Plaintiff's delinquency had to be paid in full in order to clear the Account.

The Borrower then had to retain a Mortgage Banking attorney, Julia Leah Greenfield, who was able to determine that the Delinquency was caused by the implementation of the erroneous $6,406.40 payment in January 2015. However, it took many months, dozens of hours of review of documentation and the assistance of a compliance company which ran the numbers for the entire period during which Bayview serviced the Mortgage Loan to determine the cause of the alleged Delinquency. It took until October 2018 for Bayview to agree that the error was Bayview's.

### E. Borrower's Counsel Attempts to Get an Explanation of the Error from Bayview.

On February 12, 2018, Ms. Greenfield sent an Error Resolution Notice and Request for Information to Lior Katz, a Bankruptcy attorney with the Edward G. Schloss Law Corporation in Los Angeles, California in which the balance shown by Bayview in the Monthly Statements was disputed. Mr. Katz forwarded the Error Resolution Notice and Request for Information to Bayview's Customer Service.

Complaint for Damages

### F. Bayview Negatively Reported the Mortgage Loan as Delinquent in Violation of RESPA and filed a Notice of Default.

Ms. Greenfield received a response from Bayview to the Error Resolution Notice and Request for Information on March 14, 2018. Despite being notified by Ms. Greenfield that the negative balance on the Account was in dispute, Bayview nonetheless began reporting negative payment information to the credit bureaus about the Mortgage Loan on or before March 14, 2018 in violation of Section 6 of RESPA which prohibits a Mortgage Servicer from reporting negative credit information to credit bureaus within 60 days after the Borrower disputes the Mortgage Loan balance.

The balance on the Mortgage Loan increased every month. Although the Borrower mailed the payment to Bayview  post  bankruptcy every month starting in September 2017 , Bayview refused to accept the monthly payments after December 2017. The payments were mailed back to the Borrower. At the time that Bayview filed a Notice of Default in July, 2018, the claimed arrears balance was approximately $57,000. The Borrower could not understand why she was in foreclosure and owing such a huge but increasing balance when she had made every payment as required during the Bankruptcy Period and was never notified of the burgeoning balance in the Account during that time.

Until just a few months ago, the credit bureaus initially showed that she was delinquent in her Mortgage Loan and numerous other errors, including the fact that she did not have a Mortgage Loan with Bayview. These errors prevailed for months despite the Borrower's disputes with the credit bureaus and Ms. Greenfield's notification to Bayview's counsel and Customer Service.

## G. Borrower's Damages.

Bayview's error caused tremendous anxiety and stress for the Borrower, especially since the Notice of Default was recorded, and Bayview was not providing any assistance to her in trying to determine what went wrong. Her payments were being returned and she was heading directly towards a foreclosure sale which would take her home away from her. She was terrified that she was going to lose her home for reasons that no one could explain. Bayview's error also created a financial nightmare for the Borrower. She is in the business of purchasing and renovating residential properties. Because she had just emerged from a Bankruptcy, with the Notice of Default on her credit reports, she was unable to get loans for her business with favorable pricing. She was forced to borrow secured money at hard money rates and fees and also had to use a substantial amount of her savings in order to acquire capital for her business. Because of the stress, the Borrower reluctantly decided to sell the Property. However, the fact that the Notice of Default was listed on the Preliminary Title Report caused potential Buyers to avoid the Property.

The Borrower has significant damages resulting from Bayview's error, including, without limitation, Plaintiff's legal fees, the fees of the compliance company, the legal fees of the Bankruptcy counsel who were trying to obtain an explanation of the large negative balance from Bayview Customer Service, emotional distress damages and the cost of the hard money loans and loss of income from the savings that was used to pay for her business capital.

## **CHARGING ALLEGATIONS**

10.     Plaintiff brings this action for damages from (1) Violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* (hereinafter "FDCPA"), (2) Violation of the Real Estate Settlement Procedures Act (hereinafter "RESPA"), (3) Violation of the California

_____

Fair Credit Reporting Act, (4) Breach of Fiduciary Duty, (5) Breach of Contract, (6) Breach of the Covenant of Good Faith and Fair Dealing, and (7) Negligent Infliction of Emotional Distress.

**COUNT 1 – VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT**

11.    Plaintiff restates and realleges paragraphs 1 through 9 as though fully set forth herein.

12.    Plaintiff is a "consumer" as defined by FDCPA § 1692a(3).

13.    The subject debt and the unauthorized fees and costs qualify as a "debt" as defined by FDCPA § 1692a(5) as they arise out of a transaction for personal, family, or household purposes.

14.    Defendant is a "debt collector" as defined by§ 1692a(6) because Defendant regularly collects debts and uses the mail and/or the telephone to collect delinquent consumer accounts. Defendant is a "debt collector" under the FDCPA because the Mortgage Loan was in default at time the Mortgage Loan was acquired by Defendant.

15.    The FDCPA prohibits the use of "conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. §1692d.

16.    The FDCPA prohibits the use of "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. §1692e.

17.    The FDCPA prohibits the use of "use unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. §1692f.

18.    Defendant violated 15 U.S.C. §§1692 d, e(2), e(5), e(8), e(l0), f and f(l) through its debt collection efforts.

19.    Defendant violated 15 U.S.C. §1692d when Defendant engaged in abusive and oppressive conduct within one year of the filing of the Complaint through (i) unethical mismanagement of the escrow account; (ii) refusal to correct their accounting errors or adequately respond to Plaintiff repeated disputes over several years; (iii) misapplication and rejection of payments; and (iv) assessment of illegal fees.

Complaint for Damages

20.    Defendant's actions violated 15 U.S.C. §§ 1692e & f by unfairly, unconscionable, falsely and deceptively (i) misrepresenting the status of the debt; (ii) attempting to collect illegal fees and costs not authorized by law or the contract; (iii) misrepresenting the amounts owed for escrow; (iv) declaring the loan in delinquent or default status; (v) threatening a foreclosure sale, (vi) assessing illegal foreclosure fees; (vii) assessing escrow overdraft charges and improper corporate advances, fees, and costs in their dunning letters, acceleration notices, restatement letters, and payoff letters; (viii) reporting false information and by reporting the loan delinquent to credit bureaus.

21.    Defendant violated 15 U.S.C. § 1692(e)(2) when it misrepresented the character, amount, or legal status of the subject debt by (i) attempting to collect illegal fees and costs not authorized by law or the contract; (ii) misrepresenting the amounts owed for escrow; (iii) declaring the loan in delinquent or default status; (iv) threatening a foreclosure sale, (v) assessing illegal foreclosure fees; and (vi) assessing escrow overdraft charges and improper corporate advances, fees, and costs in their dunning letters, acceleration notices, restatement letters, and payoff letters.

22.    Defendant violated 15 U.S.C. §1692(e)(5) when it took legal action that cannot legally be taken by starting a foreclosure action after the Chapter 13 Discharge and subsequently (i) making misrepresentations of the legal status of the debt; (ii) attempting to collect illegal fees and costs not authorized by law or the contract; (iii) making misrepresentations of the amounts owed for escrow; (iv) declaring the loan in delinquent or default status; (v) threatening a foreclosure sale, (vi) assessing illegal foreclosure fees; and (vii) assessing escrow overdraft charges and improper corporate advances, fees, and costs in their dunning letters, acceleration notices, restatement letters, and payoff letters.

23.    Defendant violated 15 U.S.C. §1692(e)(8) by reporting false information to a third party when it reported Plaintiff's loan as delinquent to the three credit bureaus.

24.    Defendant violated 15 U.S.C. §1692(e)(J0) when it employed deceptive means by (i) misrepresenting of the status of the debt; (ii) attempting to collect illegal fees and costs

- 10 -

_____

not authorized by law or the contract; (iii) misrepresenting the amounts owed for escrow; (iv) declaring the loan in delinquent or default status; (v) threatening a foreclosure sale, (vi) assessing illegal foreclosure fees; and (vii) assessing escrow overdraft charges and improper corporate advances, fees, and costs in their dunning letters, acceleration notices, restatement letters, and payoff letters.

25.    Defendant violated 15 U.S.C. § 1692f by employing unfair and unconscionable means to collect the subject debt by (i) attempting to collect illegal fees and costs not authorized by law or the contract; (ii) misrepresenting the amounts owed for escrow; (iii) declaring the loan in delinquent or default status; (iv) threatening a foreclosure sale, (v) assessing illegal foreclosure fees; (vi) assessing escrow overdraft charges and improper corporate advances, fees, and costs in their dunning letters, acceleration notices, restatement letters, and payoff letters; and (vii) reporting false information and by reporting the loan delinquent to credit bureaus.

26.    Defendant violated 15 U.S.C. §1692f (1) by attempting to collect and collecting amounts (including any interest, fee, charge, or expense incidental to the principal obligation) that were not expressly authorized by the agreement creating the debt (Note and/or Mortgage) or permitted by law via the Chapter 13 Bankruptcy Discharge by (i) misrepresenting of the status of the debt; (ii) attempting to collect illegal fees and cost not authorized by law or the contract; (iii) misrepresenting of the amounts owed for escrow; (iv) declaring the loan in delinquent or default status; (v) threatening a foreclosure sale, (vi) assessing illegal foreclosure fees; (vii) assessing escrow overdraft charges and improper corporate advances, fees, and costs in their dunning letters, acceleration notices, restatement letters, and payoff letters; and (viii) reporting false information and by reporting the loan delinquent to credit bureaus.

## <u>COUNT 2 - VIOLATION OF THE REAL ESTATE SETTLEMENT PROCEDURES ACT (RESPA)</u>

27.    Plaintiff restates and realleges paragraphs 1 through 26 as though fully set forth herein.

28.    The subject loan is a "federally related mortgage" under RESPA.

- 11 -

29.    Defendant is a "servicer" under RESPA § 2606(i)(2).

30.    While servicing the subject loan, Defendant charged Plaintiff improper fees, costs and charges not legally due under the mortgage contract or applicable law.

31.    Defendant violated RESPA by requiring Plaintiff to make excessive escrow payments not based on the amount legally due after the Chapter 13 Bankruptcy Discharge and reasonably estimated expenditures or publicly available data, tax bills, or insurance bills for] the subject property.

32.    Defendant failed to timely acknowledge receipt of, respond to, or conduct a reasonable investigation in response to Plaintiff' QWRs or requests for information and disputes regarding servicing in violation of RESPA § 2606(e).

33.    Defendant violated RESPA § 2606(e)(3) by failing to acknowledge receipt of Plaintiff's letters disputing the application of payments, the assessment of illegal fees, and the handling of the escrow account.

34.    Defendant violated RESPA by reporting Plaintiff as delinquent to credit bureaus within sixty days of receiving a letter disputing the servicing.

35.    Defendant violated RESPA by failing to correct Plaintiff's account within sixty days of receiving a letter disputing the servicing m violation of RESPA § 2605(e)(2)(A).

36.    Defendant violated RESPA by:

a) demanding escrow payments that significantly exceeded the actual amount required for insurance and taxes;

b) overcharging Plaintiff for taxes and insurance;

c) assessing fees against Plaintiff without conducting a complete and accurate annual escrow analysis or providing prior notice (12 U.S.C. § 2609(b));

d) deducting amounts from Plaintiff account for unrelated fees and costs;

e) implementing an "escrow shortage or deficiency" without providing notice or producing documentation to substantiate the shortage prior to collection;

f) failing to send notice of the escrow increase or conduct an accurate annual escrow

- 12 -

analysis before imposing fees to Plaintiff escrow account;

g) failing to provide any notice of the escrow shortage until after it had charged the amount to Plaintiff' account and deducted it from the escrow;

h) demanding, assessing, charging, and funding Plaintiff escrow account with more than the $1/6^{th}$ cushion allowed under RESP A § 2609(2);

i) failing to refund a escrow surplus over $50; and

j) failing to correct the wrongful escrow increase, charge, or deductions for taxes and insurance in accordance with RESPA.

### **COUNT 3 – BREACH OF FIDUCIARY DUTY**

37.    Plaintiff restates and realleges paragraphs 1 through 36 as though fully set forth herein.

38.    A fiduciary relationship existed between Defendant and Plaintiff with respect to management of Plaintiff's escrow account.

39.    Defendant owed a fiduciary duty to Plaintiff because Defendant was placed in a position of trust while managing Plaintiff's escrow account.

40.    Defendant had a duty under the mortgage with respect to the escrow accout.to apply the amounts held in escrow for proper purposes only.

41.    Defendant breached its duty by (a) using escrow funds to pay unearned fees and costs and to overpay taxes and insurance; (b) misleading Plaintiff as to the amount of insurance and taxes owed; ( c) debiting illegal amounts from the escrow account without authorization; and (d) profiting from undisclosed fees and costs and costs and overpayment of taxes and insurance.

42.    Defendant failed to manage the escrow account in good faith when Defendant (a) failed to properly account for timely payments; (b) failed to provide sufficient notice of a payment change or escrow change; ( c) failed to provide Plaintiff notice for actual amounts due for insurance and taxes; and ( d) failed to respond to Plaintiff after repeated requests; and (e) used the escrow account to pay for unauthorized fees unrelated to taxes or insurance.

Complaint for Damages

43.    Defendant exercised its discretion arbitrarily, capriciously, and in a manner inconsistent with the reasonable expectations of the parties, without a proper motive.

## **COUNT 4 – BREACH OF CONTRACT**

44.    Plaintiff restates and realleges paragraphs 1 through 43 as though fully set forth herein.

45.    The contract between Plaintiff and Defendant required each party to perform their respective duties under the note and/or mortgage as modified by the Chapter 13 Plan.

46.    Plaintiff fully performed her duties under the note and/or mortgage as modified by Chapter 13 Plan by tendering all monthly payments to Defendant.

47.    Defendant breached its duties under the contract by:

(a) Failing to credit and apply Plaintiff's payments as required by the contract;

(b) Assessing unauthorized late fees, legal fees, costs and property inspection fees;

(c) Failing to apply payments to interest and principal before escrow and fees;

(d) Failing to provide accurate repayment and reinstatement figures;

(e) Failing to accurately respond to Plaintiff's correspondence and other disputes;

(f) Overcharging Plaintiff's escrow account for taxes and insurance;

(g) Modifying monthly payments without notification to Plaintiff;

(h) Placing the loan in default and negatively reporting Plaintiff to credit bureaus;

(i) Converting escrow funds to unauthorized fees and costs; and

(j) Failing to conduct its affairs in good faith.

48.    Due to the Defendant's breach of the contract, Plaintiff has been damaged in an amount to be determined at the trial of this matter, but not less that jurisdictional limits of this court.

- 14 -

## COUNT 5 - BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

49.     Plaintiff restates and realleges paragraphs 1 through 48 as though fully set forth herein.

50.     The contract between Plaintiff and Defendant required each party to perform their respective duties under the note and/or mortgage as modified by the Chapter 13 Plan.

51.     Defendant breached the implied covenant of good faith and fair dealing by interfering and failing to cooperate with Plaintiff in the performance of the contract. Defendant failed to perform its duties under the note and/or mortgage by:

(a) Failing to credit and apply Plaintiff's payments as required by the contract;

(b) Assessing unauthorized late fees, legal fees, costs and property inspection fees;

(c) Failing to apply payments to interest and principal before escrow and fees;

(d) Failing to provide accurate repayment and reinstatement figures;

(e) Failing to accurately respond to Plaintiff's correspondence and other disputes;

(f) Overcharging Plaintiff's escrow account for taxes and insurance;

(g) Modifying monthly payments without notification to Plaintiff;

(h) Placing the loan in default and negatively reporting Plaintiff to credit bureaus;

(i) Converting escrow funds to unauthorized fees and costs; and

(j) Failing to conduct its affairs in good faith.

52.     Due to the Defendant's breach of the covenant of good faith and fair dealing between the parties, Plaintiff has been damaged in an amount to be determined at the trial of this matter, but not less that jurisdictional limits of this court.

## COUNT 6 – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

53.     Plaintiff restates and realleges paragraphs 1 through 52 as though fully set forth herein.

- 15 -

54.     Defendant owed a duty to Plaintiff to perform its obligations of servicing the subject note and/or mortgage on Plaintiff's Property.

55.     During the servicing of Plaintiff's note and/or mortgage on her Property, Defendant negligently breached its duties to properly service the note and/or mortgage by:

(a) Failing to credit and apply Plaintiff's payments as required by the contract;

(b) Assessing unauthorized late fees, legal fees, costs and property inspection fees;

(c) Failing to apply payments to interest and principal before escrow and fees;

(d) Failing to provide accurate repayment and reinstatement figures;

(e) Failing to accurately respond to Plaintiff's correspondence and other disputes;

(f) Overcharging Plaintiff's escrow account for taxes and insurance;

(g) Modifying monthly payments without notification to Plaintiff;

(h) Placing the loan in default and negatively reporting Plaintiff to credit bureaus;

(i) Converting escrow funds to unauthorized fees and costs; and

(j) Failing to conduct its affairs in good faith.

56.     As a direct and proximate result of the acts of Defendant, as aforesaid, Plaintiff sustained severe emotional distress, all to Plaintiff's damage in a sum within the jurisdiction of this court and to be shown according to proof.

57.     By reason of the foregoing, Defendant has acted with malice, fraud and oppression, and an award of punitive damages in a sum according to proof at trial is justified, warranted and appropriate.

**WHEREFORE**, Plaintiff prays for judgment against Defendant BAYVIEW LOAN SERVICING, LLC as follows:

## **COUNT 1:**

1. For an award of compensatory and consequential damages from Defendants in an amount of approximately $100,000;

2. For prejudgment interest on damages;

- 16 -

3. For costs of suit herein incurred; and

4. For such other and further relief as the court may deem proper.

### COUNT 2:

1. For an award of compensatory and consequential damages from Defendants in an amount of approximately $100,000;

2. For prejudgment interest on damages;

3. For costs of suit herein incurred; and

4. For such other and further relief as the court may deem proper.

### COUNT 3:

1. For an award of compensatory and consequential damages from Defendants in an amount of approximately $100,000;

2. For prejudgment interest on damages;

3. For costs of suit herein incurred; and

4. For such other and further relief as the court may deem proper.

### COUNT 4:

1. For an award of compensatory and consequential damages from Defendants in an amount of approximately $100,000;

2. For prejudgment interest on damages;

3. For costs of suit herein incurred; and

4. For such other and further relief as the court may deem proper.

### COUNT 5:

1. For an award of compensatory and consequential damages from Defendants in an amount of approximately $100,000;

2. For prejudgment interest on damages;

3. For costs of suit herein incurred; and

4. For such other and further relief as the court may deem proper.

## **COUNT 6:**

1. For an award of compensatory and consequential damages from Defendants in an amount of approximately $100,000;

2. For prejudgment interest on damages;

3. For costs of suit herein incurred; and

4. For such other and further relief as the court may deem proper.

Dated:   December 4, 2020                    **WEBER FIRMAN**


                                             /s/Fritz J. Firman
                                             Fritz J. Firman
                                             Attorneys for Plaintiff
                                             Katheryn L. Siroonian

1

## **<u>DEMAND FOR JURY TRIAL</u>**

Plaintiff hereby demand a jury trial as provided by Rule 38(a) of the Federal Rules of Civil Procedure.

Dated:   December 4, 2020                    **WEBER FIRMAN**


                                                                    /s/Fritz J. Firman_____
                                                                    Fritz J. Firman
                                                                    Attorneys for Plaintiff
                                                                    Katheryn L. Siroonian

Complaint for Damages

# EXHIBIT A

Case 8:12-bk-11150-TA   Doc    Filed 09/26/17   Entered 09/26/17 15:57:49   Desc Main
POST-PETITION LEDGER

SIROONIA,
KATHERYN L

| Transaction Date | AMOUNT RECEIVED | Post Due Date | POST-PET AMOUNT DUE | Post-Pet/ Debtor Suspense | Post-Pet Suspense Balance | Comments | | Total Contractual Amount Applied | Over(+) Under(-) Applied TOTAL |
|---|---|---|---|---|---|---|---|---|---|
| | BK FILED | 01/2012 | | $4,495.00 | $4,495.00 | | | | $0.00 |
| 03/13/12 | $4,495.00 | | | $4,495.00 | $4,495.00 | | | | $0.00 |
| 03/20/12 | $4,770.45 | 02/01/12 | $4,770.46 | $0.00 | $4,495.00 | Per POC | | $4,770.46 | $0.00 |
| 04/18/12 | $4,770.45 | 03/01/12 | $4,770.46 | $0.00 | $4,495.00 | | | $4,770.46 | $0.00 |
| 05/21/12 | $4,770.46 | 04/01/12 | $4,770.46 | $0.00 | $4,495.00 | | | $4,770.46 | $0.00 |
| 06/15/12 | $4,770.45 | 05/01/12 | $4,770.46 | $0.00 | $4,495.00 | | | $4,770.46 | $0.00 |
| 07/13/12 | $4,770.45 | 06/01/12 | $4,770.46 | $0.00 | $4,495.00 | | | $4,770.46 | $0.00 |
| 08/17/12 | $4,770.45 | 07/01/12 | $4,770.45 | $0.00 | $4,495.00 | | | $4,770.45 | $0.00 |
| 09/17/12 | $4,770.45 | 08/01/12 | $4,770.46 | $0.00 | $4,495.00 | | | $4,770.45 | $0.00 |
| 10/15/12 | $4,770.45 | 09/01/12 | $4,770.46 | $0.00 | $4,495.00 | | | $4,770.46 | $0.00 |
| 11/19/12 | $4,770.45 | 10/01/12 | $4,770.45 | $0.00 | $4,495.00 | | | $4,770.45 | $0.00 |
| 12/17/12 | $4,770.45 | 11/01/12 | $4,770.46 | $0.00 | $4,495.00 | | | $4,770.45 | $0.00 |
| 01/02/13 | $3,648.67 | 12/01/12 | $4,770.46 | -$1,221.79 | $3,273.21 | | | $4,770.46 | $0.00 |
| 02/27/13 | $4,770.46 | 01/01/13 | $4,770.46 | $0.00 | $3,273.21 | | | $4,770.46 | $0.00 |
| 03/18/13 | $4,770.46 | 02/01/13 | $4,545.17 | $225.29 | $3,498.50 | Per Budget | | $4,545.17 | $0.00 |
| 04/18/13 | $4,770.46 | 03/01/13 | $4,545.17 | $225.29 | $3,723.79 | | | $4,545.17 | $0.00 |
| 05/16/13 | $4,770.46 | 04/01/13 | $4,545.17 | $225.29 | $3,949.08 | | | $4,545.17 | $0.00 |
| 06/13/13 | $4,770.46 | 05/01/13 | $4,545.17 | $225.29 | $4,174.37 | | | $4,545.17 | $0.00 |
| 07/02/13 | $4,545.17 | 06/01/13 | $4,545.17 | $0.00 | $4,174.37 | | | $4,545.17 | $0.00 |
| 08/01/13 | $4,545.17 | 07/01/13 | $4,545.17 | $0.00 | $4,174.37 | | | $4,545.17 | $0.00 |
| 09/23/13 | $4,545.17 | 08/01/13 | $4,545.17 | $0.00 | $4,174.37 | | | $4,545.17 | |
| 10/31/13 | $4,545.17 | 09/01/13 | $4,545.17 | $0.00 | $4,174.37 | | | $4,545.17 | $0.00 |
| 11/25/13 | $4,545.17 | 10/01/13 | $4,545.17 | $0.00 | $4,174.37 | | | $4,545.17 | $0.00 |
| 01/02/14 | $4,545.17 | 11/01/13 | $4,545.17 | $0.00 | $4,174.37 | | | $4,545.17 | $0.00 |
| 02/04/14 | $4,545.17 | 12/01/13 | $4,545.17 | $0.00 | $4,174.37 | | | $4,545.17 | $0.00 |
| 03/03/14 | $4,545.17 | 01/01/14 | $4,545.17 | $0.00 | $4,174.37 | | | $4,545.17 | $0.00 |
| 04/03/14 | $4,545.17 | 02/01/14 | $4,545.17 | $0.00 | $4,174.37 | | | $4,545.17 | $0.00 |
| 05/02/14 | $4,545.17 | 03/01/14 | $4,545.17 | $0.00 | $4,174.37 | | | $4,545.17 | $0.00 |

Case 8:12-bk-11150-TA   Doc   Filed 09/26/17   Entered 09/26/17 15:57:49   Desc Main
FORBEARANCE LEDGER

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 09/05/14 | $4,545.17 | 04/01/14 | $4,545.17 | $0.00 | $4,174.37 | | | $4,545.17 | $0.00 |
| 07/28/14 | $4,545.17 | 05/01/14 | $4,545.17 | -$522.03 | $3,674.37 | | | $4,545.17 | $0.00 |
| 08/05/14 | $4,545.17 | 06/01/14 | $4,545.17 | $0.00 | $3,674.37 | | | $4,545.17 | $0.00 |
| 09/10/14 | $4,545.17 | 07/01/14 | $4,545.17 | $0.00 | $3,674.37 | | | $4,545.17 | $0.00 |
| 10/28/14 | $4,545.17 | 08/01/14 | $4,545.17 | $0.00 | $3,674.37 | | | $4,545.17 | $0.00 |
| 11/19/14 | $9,400.34 | 09/01/14 | $4,545.17 | $4,545.17 | $8,215.54 | | | $4,545.17 | $0.00 |
| | | 10/01/14 | $4,545.17 | -$4,545.17 | $3,674.37 | | | $4,545.17 | $0.00 |
| 12/03/14 | $4,545.17 | 11/01/14 | $4,545.17 | $0.00 | $3,674.37 | | | $4,545.17 | $0.00 |
| 01/05/15 | $4,545.17 | 12/01/14 | $6,406.40 | -$1,861.23 | $1,813.14 | > Per filed pcn | | $6,406.40 | $0.00 |
| 02/02/15 | $4,545.17 | | | $4,545.17 | $6,359.34 | | | | $0.00 |
| 03/05/15 | $4,545.17 | 01/01/15 | $6,406.40 | -$1,861.23 | $4,497.03 | | | $6,406.40 | $0.00 |
| 04/14/15 | $4,545.17 | 02/01/15 | $6,406.40 | -$1,861.23 | $2,633.05 | | | $6,406.40 | $0.00 |
| 05/20/15 | $4,545.17 | 03/01/15 | $6,406.40 | -$1,861.23 | $774.92 | | | $6,406.40 | $0.00 |
| 06/05/15 | $4,545.17 | | | $4,545.17 | $5,319.79 | | | | $0.00 |
| 07/14/15 | $4,545.17 | 04/01/15 | $6,406.40 | -$1,861.23 | $3,458.56 | | | $6,406.40 | $0.00 |
| 08/24/15 | $4,545.17 | 05/01/15 | $6,406.40 | -$1,861.23 | $1,597.33 | | | $6,406.40 | $0.00 |
| 09/29/15 | $4,545.17 | | | $4,545.17 | $6,142.50 | | | | $0.00 |
| 10/27/15 | $4,932.89 | 06/01/15 | $6,406.40 | -$1,473.74 | $4,563.76 | | | $6,406.40 | $0.00 |
| 12/01/15 | $4,932.63 | 07/01/15 | $6,406.40 | -$1,473.74 | $3,109.02 | | | $6,406.40 | $0.00 |
| 12/03/15 | $5,035.35 | 08/01/15 | $7,406.40 | -$1,363.05 | $1,874.57 | | | $6,406.40 | $0.00 |
| 02/02/16 | $5,095.35 | 09/01/15 | $6,406.40 | -$1,300.05 | $554.92 | | | $6,406.40 | $0.00 |
| 02/24/16 | $5,095.35 | 10/01/15 | $4,932.63 | $163.69 | $765.61 | > Per filed pcn | | $4,932.69 | $0.00 |
| 03/17/16 | $5,095.35 | 11/01/15 | $4,932.69 | $163.69 | $892.30 | | | $4,932.69 | $0.00 |
| 04/20/16 | $5,095.35 | 12/01/15 | $4,932.65 | $163.69 | $1,019.99 | | | $4,932.65 | $0.00 |
| 05/18/16 | $5,095.35 | 01/01/16 | $4,932.65 | $163.69 | $1,159.66 | | | $4,932.65 | $0.00 |
| 06/06/16 | $5,095.35 | 02/01/16 | $4,932.65 | $163.69 | $1,373.37 | | | $4,932.65 | $0.00 |
| 07/15/16 | $5,095.35 | 03/01/16 | $4,932.69 | $163.69 | $1,472.05 | | | $4,932.65 | $0.00 |
| 03/16/16 | $5,095.35 | 04/01/16 | $4,932.69 | $163.69 | $1,630.65 | | | $4,932.69 | $0.00 |
| 02/27/16 | $5,095.35 | 05/01/16 | $4,932.65 | $163.69 | $1,784.34 | | | $4,932.65 | $0.00 |
| 10/21/16 | $5,232.66 | 06/01/16 | $5,603.05 | $290.32 | $2,602.29 | | | $4,932.65 | $0.00 |
| 11/16/16 | $6,233.60 | 07/01/16 | $5,603.06 | $290.07 | $2,324.38 | | | $4,932.65 | $0.00 |
| 12/05/16 | $5,233.60 | 08/01/16 | $5,933.05 | $290.02 | $2,616.03 | | | $4,932.65 | $0.00 |
| 01/13/17 | $5,233.60 | 09/01/16 | $5,603.60 | $290.92 | $2,674.42 | | | $4,932.65 | $0.00 |
| 02/27/17 | $5,233.60 | 10/01/16 | $5,104.55 | $128.13 | $3,402.55 | > Per filed pcn | | $5,104.55 | $0.00 |
| 03/14/17 | $5,233.60 | 11/01/16 | $5,104.55 | $128.13 | $3,026.00 | | | $5,104.55 | $0.00 |

Case 8:12-bk-11150-TA    Doc    Filed 09/26/17    Entered 09/26/17 15:57:40    Desc Main
POSTPETITIONCHARGES

| 04/14/17 | $5,230.68 | 12/01/16 | $5,230.68 | $0.00 | $3,228.68 | b-Per filed acn | | $5,230.68 | $0.00 |
| 05/15/17 | $5,230.68 | 01/01/17 | $5,230.68 | $0.00 | $3,228.68 | | | $5,230.68 | $0.00 |
| 06/22/17 | $5,230.68 | 02/01/17 | $5,230.68 | $0.00 | $3,228.68 | | | $5,230.68 | $0.00 |
| 07/25/17 | $5,230.68 | 03/01/17 | $5,230.68 | $0.00 | $3,228.68 | | | $5,230.68 | $0.00 |
| 08/14/17 | $5,230.68 | 04/01/17 | $5,230.68 | $0.00 | $3,228.68 | | | $5,230.68 | $0.00 |

*As of September 19, 2017, Debtors are due for five (5) post-petition monthly mortgage payments for the months of May 2017 through and including September 2017 in the amount of $5,230.68 each. Less $3,228.68 in suspense, the total post-petition default as of September 19, 2017 is $22,924.72.

1